IN THE CASE OF


UNITED STATES, Appellee

v.

Thomas L. NOURSE, Staff Sergeant
U.S. Marine Corps, Appellant

No. 01-0020

Crim. App. No. 99-0663

United States Court of Appeals for the Armed Forces

Argued  April 25, 2001

Decided July 17, 2001

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and SULLIVAN, GIERKE, and BAKER, JJ., joined.


<u>Counsel</u>


For Appellant:  Lieutenant <u>Amanda St. Claire</u>, JAGC, USNR (argued); <u>Lieutenant
Commander Steven B. Fillman</u>, JAGC, USNR, and <u>Lieutenant Glenn Gerding</u>, JAGC,
USNR (on brief).


For Appellee:  Lieutenant <u>James E. Grimes</u>, JAGC, USNR (argued); <u>Colonel Marc
W. Fisher, Jr.</u>, USMC, and <u>Lieutenant Commander Philip L. Sundel</u>, JAGC, USNR
(on brief); <u>Lieutenant Danette L. Walker</u>, JAGC, USNR.


Military Judge:  G.E. Champagne


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION</u>.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of conspiracy to commit larceny, reckless driving, two specifications of larceny, wrongful appropriation, and unlawful entry, in violation of Articles 81, 111, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 911, 921, and 934, respectively.  He was sentenced to a dishonorable discharge, confinement for 30 months, total forfeitures, and reduction to the lowest enlisted grade.  The convening authority approved the sentence as adjudged and waived automatic forfeitures for a period of 6 months to provide support for appellant's dependents.  On August 8, 2000, the Court of Criminal Appeals affirmed in an unpublished opinion.

On appellant's petition, we granted review of the following issue:

> WHETHER THE LOWER COURT ERRED IN HOLDING THAT
> UNCHARGED MISCONDUCT WAS ADMISSIBLE IN
> SENTENCING WHERE THE UNCHARGED MISCONDUCT DID
> NOT DIRECTLY RELATE TO THE CHARGED OFFENSES AS
> REQUIRED BY RCM 1001(b).  COMPARE UNITED STATES
> V. WINGART, 27 MJ 128 (CMA 1988), WITH UNITED
> STATES V. SHUPE, 36 MJ 431 (CMA 1993).

For the reasons set forth below, we affirm.

## I.    BACKGROUND

Appellant and Sergeant (Sgt) Dilembo worked part-time for the Orleans Parish Criminal Sheriff's Office in New Orleans, Louisiana.  One day in September 1997, appellant and Sgt Dilembo were mowing grass around a warehouse used by the Sheriff's Office when they decided to steal some rain ponchos.  The two began loading cases of ponchos from the warehouse into a truck owned by the Sheriff's Office.  They were noticed by an individual who called in an anonymous tip, causing Assistant Chief Deputy Hall of the Sheriff's Office to arrive and witness the two engaged in the theft.

A short time later, appellant and Sgt Dilembo left the scene in the Sheriff's Office truck, with Chief Hall in pursuit. During the chase, appellant drove recklessly through residential neighborhoods, forcing Chief Hall to abandon pursuit.  Appellant was apprehended when he returned to the Sheriff's Office to retrieve his own car.  Appellant pleaded guilty to the charges stemming from these events, including larceny of ponchos valued at $2,256.

During the presentencing portion of the court-martial, the Government sought to introduce testimony from Sgt Dilembo about other larcenies of property from the Sheriff's Office that he and appellant committed as evidence in aggravation under RCM

1001(b)(4), Manual for Courts-Martial, United States (1995 ed.).[1]
The defense objected on the basis of "uncharged misconduct and
relevance," referring to the higher standard for admissibility
under RCM 1001 for evidence of aggravating circumstances.  The
Government responded that the evidence was admissible to show
that the charged larceny "was not an isolated incident but a
course of conduct and puts the offenses themselves in proper
perspective," citing United States v. Ross, 34 MJ 183 (CMA
1992).  The Government further explained that appellant had not
been charged with the other larcenies because the offenses were
discovered after preferral of charges and arraignment.

The military judge made a preliminary ruling that the
proffered evidence was admissible under RCM 1001(b)(4) to show
that the charged larceny was part of a course of conduct
involving similar crimes perpetrated upon the same victim,
citing United States v. Shupe, 36 MJ 431 (CMA 1993), and United
States v. Mullens, 29 MJ 398 (CMA 1990).  In the course of
evaluating the evidence under Mil.R.Evid. 403, Manual, supra,
the military judge observed that the prejudicial impact of the
evidence could be high, but noted that he would only consider

---

[1] All Manual provisions are cited to the version in effect at the time of
trial.  The current version is unchanged, unless otherwise indicated.  RCM
1001(b)(4) was amended on October 6, 1999.  The changes involved moving
material previously featured in the Discussion into the text of the rule and
adding intentional selection of the victim because of certain characteristics
as a form of aggravating evidence.

the testimony for purposes of putting appellant's crime in context. The Government then elicited testimony from Sgt Dilembo about other thefts of Sheriff's Office property prior to the charged larceny. The approximate value of this stolen property was $30,000. The Government also introduced corroborating testimony from Chief Hall, as well as evidence that appellant sold field gear to a military surplus store during the same period of time.

After the conclusion of the Government's sentencing case, the military judge reiterated his earlier ruling concerning the uncharged thefts and noted that he would consider the evidence only for a limited purpose:

> to show the continuous nature of the charged conduct and its impact on the Orleans Parish Criminal Sheriff's Office. More specifically, it's evidence of the accused's motive; his modus operandi; his intent and his plan with respect to the charged offenses. And it shows evidence of a continuous course of conduct involving the same or similar crimes, the same victim, the same general place.

The judge warned trial counsel not to argue that appellant should be subject to more severe punishment on account of the uncharged larcenies, that appellant had a criminal propensity, or that the value of the other stolen property should affect appellant's sentence.

## II.  DISCUSSION

RCM 1001(b)(4) governs what the prosecution may present as evidence in aggravation during the presentencing phase of courts-martial.  The rule provides that "trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."  (Emphasis added.)  The Drafters' Analysis notes that "[t]his subsection does not authorize introduction in general of evidence of bad character or uncharged misconduct.  The evidence must be of circumstances directly relating to or resulting from an offense of which the accused has been found guilty."  Manual, supra at A21-67.

In United States v. Wingart, 27 MJ 128 (CMA 1988), our Court considered the significance of the phrase "directly relating to or resulting from."  Wingart, which involved a conviction for indecent acts, held that it was error to admit evidence of previous uncharged sexual misconduct with another victim as an aggravating circumstance under RCM 1001(b)(4). Wingart stated that relevance and admissibility should be assessed "in relation to the language of RCM 1001(b)(4)" and rejected the notion that standards of relevance and admissibility under Mil.R.Evid. 401 and 404(b) should apply to other misconduct evidence offered under the rule.  Id. at 136. With respect to the scope of matters covered by the phrase

"directly relating to or resulting from the offenses of which the accused has been found guilty," the opinion explained:

> The uncharged misconduct may be admitted because it is preparatory to the crime of which the accused has been convicted – e.g., an uncharged housebreaking that occurred prior to a larceny or rape. It may accompany the offense of which the accused has been convicted – e.g., an uncharged aggravated assault, robbery, or sodomy incident to a rape. It may follow the offense of which the accused has been convicted – e.g., a false official statement concealing an earlier theft of government property.

Id. at 135.

Two years later, our Court interpreted the "directly relating to or resulting from" language in the rule as encompassing evidence of other crimes which are part of a "continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community." Mullens, 29 MJ at 400 (holding that evidence of uncharged indecent liberties the accused took with his children was admissible under RCM 1001(b)(4) at sentencing for convictions of sodomy and indecent acts with his children). We stated that evidence of this nature appropriately may be considered as an aggravating circumstance because it reflects the true impact of crimes upon the victims. Id.; RCM 1001(b)(4)("Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical

impact on or cost to any person or entity who was the victim of an offense committed by the accused . . . .").[2]  This interpretation of the rule -- allowing evidence of uncharged misconduct involving a continuous course of conduct -- has been followed in subsequent cases.  See Ross, 34 MJ at 187 (evidence that the accused had altered test scores on occasions other than those for which he was convicted was admissible to show the "continuous nature of the charged conduct and its full impact on the military community"); Shupe, 36 MJ at 436 (evidence of drug transactions not embraced by the guilty plea were admissible as aggravating circumstances to show the "continuous nature of the charged conduct and its full impact on the military community," quoting Ross).

We note that the granted issue invites a comparison between Wingart and Shupe.  The cases are not inconsistent.  Mullens, Ross, and Shupe explain that when uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims, it is encompassed within the language "directly relating to or resulting from the offenses of which the accused has been found guilty" under RCM 1001(b)(4).

Appellant relied upon Wingart at trial and on appeal to urge that the uncharged larcenies should have been excluded from

---

[2] As noted earlier, at the time of appellant's trial, this language was featured in the Discussion to RCM 1001(b)(4).  It was moved to the text in an October 1999 amendment.

consideration when fashioning an appropriate sentence in his case.  He argues that the larcenies were not directly related to the charged offenses and that the admission of more severe offenses at sentencing under a lower standard of proof is unfair and does "little more than [] inflict a gratuitous injury on the accused."  Wingart, 27 MJ at 136.  Appellant further argues that there was not a "continuous course of conduct" in this case.

We do not agree.  The evidence regarding the uncharged larcenies was admissible as an aggravating circumstance under RCM 1001(b)(4) because it directly related to the charged offenses as part of a continuing scheme to steal from the Orleans Parish Criminal Sheriff's Office.  Appellant was found guilty of larceny and conspiracy to commit larceny of goods from the Sheriff's Office on one occasion.  Evidence was admitted showing that appellant had committed the same crime upon the same victim in the same place several times prior to the charged offenses.  This evidence of a continuous course of conduct was admissible to show the full impact of appellant's crimes upon the Sheriff's Office.  Mullens, Ross, and Shupe, all supra.  The military judge weighed the evidence under Mil.R.Evid. 403, found it more probative than prejudicial, and limited his consideration of it to an appropriate purpose -- putting appellant's offenses into context.  Under these circumstances,

we hold that the military judge did not abuse his discretion when he admitted the contested evidence in this case.


### III.  CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.